**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANNA GELMAN, et al** <br> **Plaintiffs,** <br><br> **-against-** <br><br> **BARBARA C. GUINN,** *as Commissioner of the New York State Office of Temporary and Disability Assistance*, <br><br> **Defendant.** | **1: 25-cv-4948 (ALC)** <br><br> **ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs, various New York residents who receive Supplemental Nutrition Assistance Program ("SNAP") benefits, bring this claim against Barabara Guinn ("Defendant") in her official capacity, requesting injunctive relief. Plaintiffs allege that their SNAP benefits were distributed on cards with magnetic strips, instead of the more secure chip technology, which leaves Plaintiffs—and the millions of other New Yorkers who receive SNAP benefits—susceptible to skimming and theft.

Pending before the Court is Defendant's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim). Subject-matter jurisdiction is a "threshold question that must be resolved before proceeding to the merits." *United States. v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (cleaned up). Defendant argues two bases for finding no subject-matter jurisdiction: lack of standing and immunity under the Eleventh Amendment to the U.S. Constitution.

Generally, a State is immune from suit by a private individual. But if, for example, an individual seeks injunctive relief, there is an exception to immunity. Plaintiffs filed the complaint on June 12, 2025. Two weeks later, the Supreme Court decided *Medina*, making it clear that in

order for this exception to immunity to apply, the federal law under which a plaintiff seeks to vindicate her rights must provide a private right of action. *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 365 (2025). Because the Court finds that Defendant is immune from suit under the Eleventh Amendment, the Court does not reach the remaining substance of Defendants' motion.

Defendant's Motion, Dkt. 26, is **GRANTED**. The Complaint is **DISMISSED**, without prejudice.

## BACKGROUND

SNAP is a federally funded, State administered program created to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." Compl. at ¶¶ 22, 27. New York issues SNAP benefits once a month to program participants. *Id*. at ¶ 29. Benefits are issued to participants via electronic transfer to the participants' EBT cards. *Id.* at ¶¶ 32, 34. New York issued EBT cards are not equipped with chip cards, which leaves them vulnerable to "skimming." *Id*. at ¶ 44. Skimming occurs when "thieves place a skimming device," i.e., a device capable of "record[ing] bank account data when the user inserts an ATM card into the machine," on "an ATM or point-of sale device." *Id*. at ¶ 37. The bank account data is then encoded onto a blank card to "create a duplicate version of a[n EBT] card which then enables remote access to the compromised account." *Id.* at ¶ 38.

In 2022, the federal government instituted a limited program for "replacement of skimmed SNAP benefits." *Id.* at ¶ 41. The United States Secretary of Agriculture wrote a letter in 2024 noting that the "industry shift toward chip cards has proven an effective method to safeguard card usage from theft and fraud." *Id.* at ¶ 45. The letter encouraged adoption of chip cards: the U.S. Department of Agriculture "strongly urges all States to adopt the new EBT

standards, and to work with your EBT processor and SNAP retailers in your State to transition to SNAP chip cards as soon as feasible." *Id.*

Anna Gelman, Yiraldy Rodriguez, Carl Adams, Michael Valdes, Maria Ayala, Boris Shulkin, and Barbara S. Colton ("Individual Plaintiffs") are seven individuals who receive SNAP benefits. *Id*. at 2. Plaintiff La Red de Pueblos Transnacionales (together with Individual Plaintiffs, "Plaintiffs") is a "community-based organization, many of whose members are SNAP recipients who have been victims of skimming." *Id*.

Plaintiffs brought suit against Defendant as Commissioner of the New York State Office of Temporary and Disability Assistance ("OTDA"), which administers New York's SNAP program. Plaintiffs alleged violations of four sections of the Food Stamp Act, 7 U.S.C. § 2011, *et seq*., and one violation of New York State law. Plaintiffs withdrew three of their claims, leaving only their First Claim (violation of 7 U.S.C. § 2020(e)(2)(B)(i)) and Second Claim (violation 7 U.S.C. § 2014(a)). *See* Dkt. 17 at 3, n.2 (withdrawing Plaintiffs' Fifth Claim); Dkt. 28, at 31 (withdrawing Plaintiffs' Third and Fourth Claims).

On February 20, 2026, Defendant moved to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6). *See* Dkts. 26-27. Plaintiff opposed the Motion. Dkt. 28. Defendant filed their reply on April 27, 2026. Dkt. 31. Plaintiff requested, and was granted, leave to file a supplemental complaint to allege further facts in support Article III standing. *See Dkts*. 33, 35. In response, Defendant filed a supplemental motion to dismiss. Dkt. 39. The motion is now fully briefed.

## STANDARD OF REVIEW

Eleventh Amendment immunity is not necessarily a subject-matter jurisdiction question. The Supreme Court has "expressly declared that the question whether 'Eleventh Amendment

immunity is a matter of subject matter jurisdiction' is one that 'we have not decided.'" *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998)). Despite the lack of clarity, courts in this Circuit consider 12(b)(1) to be a proper basis on which to consider Eleventh Amendment immunity. *See Gasparik v. Stony Brook Univ*., 296 Fed. Appx. 151, 152 (2d Cir. 2008) (internal citation omitted) ("we find that the District Court properly concluded that it lacked subject matter jurisdiction because SUNY has not consented to be sued in a federal forum and so is immune from suit pursuant to the Eleventh Amendment").

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional authority to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court must accept as true all material factual allegations in the complaint and will draw inferences favorable to the party asserting jurisdiction. *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (citing *Merritt v. Shuttle, Inc.,* 245 F.3d 182, 186 (2d Cir. 2001) and *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Once challenged, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

**DISCUSSION**

Defendant argues that this matter must be dismissed because this Court has no jurisdiction over Plaintiffs' claims. The Court agrees. Plaintiffs do not have a private right tied to the provisions upon which they purport to rely, and this action is therefore barred by the Eleventh Amendment immunity. *See section III*, *infra*. Because Plaintiffs' claims fail the "threshold

question" of subject-matter jurisdiction, the Court will not consider the remainder of Defendant's grounds for dismissal. *See Bond*, 762 F.3d 263.

## I. Eleventh Amendment Immunity and *Ex parte Young*

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to also bar "suits by all persons against a state in federal court." *T.W. v. N.Y. State Bd. of Law Exam'r*, 110 F.4th 71, 79 (2d Cir. 2024). This prohibition extends to state officials named in their official capacities. *Daniel v. Doe 1 through Doe 10*, 2024 WL 2131446, at *3 (2d Cir. May 13, 2024) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984) and *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993)) ("[T]he Eleventh Amendment bars suit by a citizen of a State against that State, its agencies, and its officials named in their official capacities").

The Supreme Court has "carved out an exception to Eleventh Amendment immunity." *Seneca Nation v. Hochul*, 58 F.4th 664, 670 (2d Cir. 2023) (citing *Ex parte Young*, 209 U.S. 123 (1908)). The *Ex parte Young* doctrine allows a plaintiff to sue "individual state officers in their official capacities, as opposed to the state, 'provided that the complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'" *Id.* (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)).

## II. The Jurisdictional Question Raised

In this case, whether there is an enforceable right directly implicates Eleventh Amendment immunity. The Second Circuit has held that *Ex parte Young* actions are only

available where "the federal law under which a plaintiff seeks the injunction…provide[s] the plaintiff with a private right of action." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 124 (2d Cir. 2019) (citing *Garcia v. Akwesanse Hous. Auth.*, 268 F.3d 76, 88 (2d Cir. 2001)). Put another way, if there is no private action to enforce the federal law for which Plaintiff seeks prospective relief, *Ex parte Young* does not apply, and Plaintiff may not bring suit to end the alleged ongoing violation of the law.

The Court will therefore consider whether Plaintiffs properly allege the existence of a private enforceable right to enforce 7 U.S.C. § 2020(e)(2)(B)(i) or 7 U.S.C. § 2014(a) for the distinct purpose of resolving the question of Eleventh Amendment Immunity.

**III. Enforceable Right**

42 U.S.C. § 1983 "allows private parties to sue state actors who violate their 'rights' under 'the Constitution and laws' of the United States." *Medina*, 606 U.S. at 365. Federal laws promulgated pursuant to Congress's spending power undoubtedly "can create § 1983-enforceable rights." *Health & Hosp. Corp. of Marion Cnty. v. Talveski*, 599 U.S. 166, 180 (2023) (emphasis omitted). Whether such a statute does so is another question, and the Supreme Court has "set[] a demanding bar." *Id*.

To maintain a § 1983 suit premised on a federal statute, a Plaintiff must show that the statute "clearly and unambiguously gives them individual federal rights." *Medina*, 606 U.S. at 376 (cleaned up) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)). The *Medina* Court has made clear that a statute must contain "clear and unambiguous 'rights-creating language.'" *Id*. at 378 (citing *Talveski*, 599 U.S. at 186).

The Supreme Court's recent focus on "rights-creating language" is a departure from the test identified in *Blessing v. Freestone*, 520 U.S. 329 (1997). While a Plaintiff must still establish

that the statute "benefit[s] the plaintiff" as *Blessing* required, *see Id.* at 340 (requiring the Plaintiff to show that "Congress must have intended that the provision in question benefit the plaintiff"), such a showing is not sufficient, *see Medina*, 606 U.S. at 376 (citing *Gonzaga*, 536 U.S. at 290) ("To succeed, [Plaintiff] must show, at a minimum, that [the statute] does not just seek to benefit them…but 'clear[ly] and unambiguous[ly]' gives them individual federal rights"). The rights-creating language requirement is separate from whether the statute has an individual focus. *See Talveski*, 599 U.S. at 183 (listing "rights-creating language" separately from the "aggregate, not individual, focus").

Indeed, even before *Medina*, the Supreme Court has indicated that "rights-creating language" is a distinct, and indispensable, requirement. In *Talveski*, the Supreme Court noted that it had "rejected § 1983 enforceability where the statutory provision 'contain[ed] no rights-creating language.'" 599 U.S. at 183 (alterations in original) (internal citation omitted).

The key question, then, is whether there is "clear and unambiguous rights-creating language." The Court finds that there is not.

Plaintiffs argue that § 2020(e)(2)(B)(i) and § 2014(a) contain "rights-creating language." § 2020(e)(2)(B)(i) provides: "In carrying out subparagraph (A), a State agency-- **(i)** shall provide timely, accurate, and fair service to applicants for, and participants in, the supplemental nutrition assistance program." *See* Opp. at 21 ("The requirement that timely, accurate, and fair service be provided to applicants and participants in the SNAP program constitutes rights-creating language"). Plaintiffs also rely on the use of "shall" in § 2014(a): "assistance under this program shall be furnished to all eligible households who make application for such participation." *See* Opp. at 23 (quoting the same language); *see also id.* ("There could hardly be any clearer articulation of a right held by those eligible persons").

Certainly, the most unambiguous language that Congress could have used is "rights." Neither § 2020(e)(2)(B)(i) nor § 2014(a) references "rights." Plaintiffs are correct that "*Medina* does not require the specific existence of certain magic words to create an enforceable right." *Opp*. at 28. Plaintiffs, however, have offered only words that the Supreme Court has said, or at least heavily implied, are insufficient to meet the bar of "clear and unambiguous." In *Medina*, the Court's Opinion notes that "mandatory terms" such as "shall" are not necessarily "clear and unambiguous rights-creating language." 606 U.S. at 380.

A textual analysis of § 2020 confirms this conclusion. The statute references "rights" several paragraphs below the text that Plaintiffs rely on: "A system established under clause [7 U.S.C. § 2020(e)(2)(C)](ii) shall-- … (III) not deny or interfere with the *right* of the household to apply in writing." 7 U.S.C. § 2020 (e)(2)(C)(iii)(III); *see also* 7 C.F.R. 273.2(c)(1)(ii) ("Right to file in writing. All households have the right to apply or to re-apply for SNAP in writing. The State agency shall neither deny nor interfere with a household's right to apply or to re-apply in writing."). The Court need not probe much further into the statute. This clarity of this language, compared with the less clear language proffered by Plaintiffs, demonstrates the weaknesses within Plaintiffs' argument. Plaintiffs, seeking to avoid the strictures of *Medina*, rely in part on the pre-*Medina* case *Reynolds v. Guiliani*, 35 F.Supp.2d 331 (S.D.N.Y. 1999), *modified in part*, 43 F.Supp.2d 492 (S.D.N.Y. 1999). *Reynolds* does not point to any "rights-creating" language in the statues and is therefore unpersuasive. Similarly unpersuasive is *Hawai'i Disability Rts. Ctr. v. Kishimoto*, No. CV 18-00465 LEK-KJM, 2026 WL 562065 (D. Haw. Feb. 27, 2026). The *Kishimoto* court may have watered down *Medina*. *See C.F. v. Moran*, No. 3:26-CV-05095-TMC, 2026 WL 2098030, at *4 (W.D. Wash. July 21, 2026) (citing *Kishimoto*, 2026 WL 562065, at *7-11) (finding *Kishimoto* unpersuasive because it "relied on *Watson* [*v. Weeks*] and focused on the

use of mandatory and individual language in the provisions at issue"). That opinion points to specific language "tethering the state's obligation to the eligible individual's distinct medical need" to support its conclusion. *See Kishimoto*, 2026 WL 562065 at *9. This reasoning runs too closely to the *Blessing* test to support Plaintiffs claims. *Compare Blessing*, 520 U.S. at 340-41 (requiring a Plaintiff to demonstrate that Congress "intended that the provision in question benefit the plaintiff" and that "the provision giving rise to the asserted right [is] couched in mandatory…terms") *with* Opp. at 29 (arguing that it is sufficient that a statute "requires the state to provide certain services" and has a "clear focus on the [individuals] who were supposed to receive such services"); *see also Gonzaga*, 536 U.S. at 282 (citing *Blessing*, 520 U.S. at 340) ("Because the provision focused on 'the aggregate services provided by the State,' rather than 'the needs of any particular person,' it conferred no individual rights and thus could not be enforced by § 1983.").

Other, more recent cases conducting textual analysis more closely related to the reasoning in *Medina* counsel against Plaintiffs' position. *See Holmes v. Bax,* No. 25-1987, --- F.4th ----, 2026 WL 2421803, at *9 (8th Cir. Aug. 19, 2026) (finding that §§ 2014(a) and 2020(e)(2)(B) "do[] not support a private suit under § 1983"); *Andrew v. Hedberg*, No. 3:23-CV-00044-SLG, 2026 WL 1431090, at * 12 (D. Ala. May 21, 2026) (finding that "the provisions in 7 U.S.C. § 2020(e) that Plaintiffs rely on do not create privately enforceable rights").

**CONCLUSION**

When a case is dismissed for lack of subject-matter jurisdiction, "Article III deprives federal courts of the power to dismiss the case with prejudice." *Katz v. Donna Karan Co., LLC.*, 872 F.3d 114, 121 (2d Cir. 2017) (alteration omitted) (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)).

Accordingly, this case is **DIMISSED** without prejudice. The Clerk of Court is respectfully directed to terminate ECF No. 26.

**SO ORDERED.**

**Dated:** September 29, 2026
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**